402 P.2d 580

**AETNA LOAN COMPANY, a corporation, Appellant,**

v.

**APACHE TRAILER SALES, an Arizona corporation, Appellee.***

No. 2 CA–CIV 48.

Court of Appeals of Arizona.

June 9, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7821. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

McKesson, Renaud & Cook, and Fred J. Pain, Jr., Phoenix, for appellant.

Walter M. Stevenson, Tucson, for appellee.

KRUCKER, Chief Judge.

Plaintiff-counterdefendant, Aetna Loan Company, (hereinafter referred to as plaintiff) commenced an action in the lower court in replevin of a certain housetrailer. Defendant, Apache Trailer Sales, counterclaimed alleging the sale of the trailer for $2,300.00, and a breach of that contract by the plaintiff by reason of the replevin action. The plaintiff recovered possession of the housetrailer by a writ of replevin.

The court, sitting without a jury, denied relief to plaintiff, and found damages for the defendant on its counterclaim in the amount of $1,380.45, or, in the alternative, ordered the plaintiff to deliver the trailer to the defendant. The court also granted to defendant attorney's fees and expenses in the amount of $610.00 in accordance with Rule 37(c), Rules of Civil Procedure, 16 A.R.S., because of plaintiff's denial of the truth of certain requests for admission of facts which defendant was required to prove. From this judgment, plaintiff brings this appeal.

A summary of the evidence in a light most favorable to the sustaining of the judgment will be given. Interwoven in this summary is the key question of this appeal. Did plaintiff's agent, Sun Valley Claim Service (hereinafter referred to as Sun Valley), on or before February 22, 1960, have authority to bind the plaintiff to a contract to sell the housetrailer in question to the defendant?

Plaintiff actually does business within three corporations, namely, Aetna Trailer Sales Company, Aetna Loan Company, and Mobile Homes Insurance Company. Therefore, it can sell, finance, and insure a transaction within its own companies.

In 1959, the trailer was bought by one Stanley Peterson from Aetna Trailer Sales, the place of sale being Denver, Colorado. Peterson executed a promissory note secured by a chattel mortgage on the housetrailer. Without reciting all of the facts, this transaction ended by Peterson abandoning the trailer in Tucson, Arizona.

Plaintiff, on February 10, 1960, employed Sun Valley, located in Phoenix, Arizona, for the purpose of investigating the trailer, reporting on it, and obtaining bids for the sale of the trailer.

On February 11, 1960, Mr. Mason, a partner in Sun Valley, contacted Mr. Sobel (hereinafter called defendant) owner of Apache Trailer Sales, and requested a bid from him.

On February 12, 1960, Mason again requested a bid on the trailer from defendant. Defendant did submit a written bid of $2,300.00, on February 16, 1960.

On February 17, 1960, Roberta Harris, the authorized managing agent for the plaintiff, wrote a letter to Sun Valley inquiring whether additional bids had been made besides that of $2,000.00 from another trailer company. From this letter it appears that she did not know of defendant's bid of $2,300.00. This letter contains language from which the lower court could have found that it was plaintiff's intention to have the trailer sold for salvage. A part of the letter reads:

> "If you have obtained another salvage bid let me know and we will go forward on this obtaining the Hold Harmless. Of course Central Bank will not release to us this title until they are paid and I shall arrange to do this at once. I see no reason for this to be put off further. I will send the title to you as quickly as I have it, with the lien released. Also the *salvage*

*check should be made payable to* Universal Underwriters Insurance Co." (Emphasis supplied)

On February 22, 1960, Sun Valley told defendant that the defendant had bought the trailer. At the time of trial, this was denied by Sun Valley. However, the record establishes that on February 23, 1960 Sun Valley wrote to the plaintiff and informed it just how the financial arrangement would be handled for this very sale.

Later in the month, defendant was informed that plaintiff had decided to return the housetrailer to the original dealer.

On March 4, 1960, Harris, the managing agent for plaintiff, wrote to Sun Valley and admitted she acted unwisely in advising them to obtain bids and sell the trailer for salvage.

Plaintiff contends that enclosed within the letter of February 17, 1960, from Harris to Sun Valley there was included a letter of one R. J. McDonald, collection manager for Aetna Loan Company. This letter purportedly restricts Sun Valley's authority to take possession of the trailer until final disposition was decided by the company. That letter reads in part:

"In connection with the abandonment in Tucson of new 1959 Detroiter house trailer model 46' 10' 2 Bed Room Serial number 13983 * * * we hereby vest authority in you to take possession of the abandoned trailer and move it to a place of safer storage until such time as your investigation is complete and we have decided upon the disposition of the trailer."

In a reading of the record including all of the correspondence, it seems clear, and the lower court probably concluded, that this letter was the exact special authority requested by a letter of February 12, 1960, from Sun Valley to plaintiff. That letter reads in part:

"We would like to have this trailer moved at once and therefore need a letter of authority or assignment from

you to properly arrange this change of storage. We are being charged at the rate of $1.50 a day and will ask the White's Trailer Sales to take possession and store it on their lot at the rate of $10.00 per month. Please give us your letter of assignment in duplicate identifying the unit and we will immediately arrange this transfer."

 This being the situation, then the McDonald letter would in no way restrict the Sun Valley's alleged authority to sell. Also to be noted, Sun Valley's letter of February 12, 1960, was written before any bid had been received from defendant.

"It is elementary that the existence of an agency may be proved by direct evidence of an express contract of agency between principal and agent." Daly v. Williams (1955), 78 Ariz. 382, 280 P.2d 701.

"There are two main types of agency, one actual, and the other ostensible or apparent. * * *

"The authority of an actual agent can be either express, or implied. If there is evidence that the principal sought to be charged has delegated authority to the supposed agent by oral or written words which authorize him to do a certain act, or series of acts, then the authority of the agent is express. * * *" Canyon State Canners v. Hooks (1952), 74 Ariz. 70, 243 P.2d 1023.

 We will not disturb a judgment if there is any credible evidence to support it. The reviewing court must construe evidence in favor of the findings of the trial court. Hiatt v. Lee, 48 Ariz. 320, 61 P.2d 401, 107 A.L.R. 444.

 This court has reviewed all the evidence. There is enough credible evidence to show the existence of a principal-agent relationship between plaintiff and Sun Valley Claim Service, and the lower court was justified in finding that Sun Valley Claim Service did have authority on February

22, 1960 to bind the plaintiff to a contract of sale of the housetrailer in question.

A second question presented on this appeal is "Did the trial court err and abuse its discretion in awarding the defendant attorney's fees and expenses in the verdict and judgment because plaintiff had denied certain requests for admissions of fact served by defendant on plaintiff prior to trial?"

■ The purpose of Rule 36, Rules of Civil Procedure, entitled Admission of facts and of genuineness of documents, is to expedite the trial and to relieve parties of unnecessary costs in proving facts.

The defendant, after the action had been commenced, submitted to the plaintiff twenty-seven requests for admissions. The plaintiff admitted nineteen of them and denied eight. Plaintiff argues to this Court that the admissions which were denied were denied for good cause. It must be noted that the plaintiff did not submit any written objections to the requests on the ground that some or all of the requested admissions were privileged or irrelevant or that the requests were otherwise improper in whole or in part. There is no provision in the Rule in which the one who requests the admission may object to the answers. The case of Rabjohn v. Minute Maid Corporation (1958), D.C., 25 F.R.D. 195, states the only way to test the answers.

> "However, the Rule is completely silent as to any complementary method available for testing the responses. Rather, Rule 37(c) provides for the sanction in the event admissions of fact are not made and the refusal to admit is without substantial reason. The method available to the party serving the request which give efficacy to Rule 36(a) is that the trial Court may order the party not admitting the facts to pay to the other party the reasonable expenses incurred in proving such facts, including reasonable attorneys' fees."

Rule 37(c) reads in part:

"* * * Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made."

We deem it necessary to look only to four of the eight requests which were denied, as the other four are collateral to the main question in issue. Three of the latter four concern expenditures in repairing the trailer, and the fourth entails the manner of payment for the trailer, had the deal been consummated. There is substantial evidence in the record showing that plaintiff well knew that these requested admissions were true.

The other four deal with the question of authority. The defendant asked the plaintiff in different ways, but amounting to basically the same request, whether it had on or about February 22, 1960 instructed Sun Valley to accept the defendant's bid. These requests, if admitted, would have ended the litigation or, as plaintiff in this appeal contends, such requests would require the plaintiff to admit the ultimate issue.

■ The denials put the defendant in the position of proving said denials. In her deposition, Harris, the plaintiff's authorized managing agent, admitted that she had authorized Sun Valley, by means of telephone, to obtain bids and sell the trailer. This admission, together with all of the correspondence admitted into evidence, and the court's observation of all the witnesses, probably led it to conclude that the denials were not made in good faith.

> "If the denial is not made in good faith, the cost of obtaining such proof may be charged against the party who denied a request for admission of fact, knowing the same to be true." United States v. Ehbauer (1952), D.C., 13 F.R.D. 462.

■ After careful consideration of the whole record, we find sufficient evidence from which the trial court could have con-

cluded that the subject requests related to important issues in the case and that there was no good reason to deny them. Therefore, we hold that the trial court did not abuse its discretion in awarding attorney's fees and expenses in the judgment.

 There were two oral arguments heard by this Court. Counsel for appellant was not present at the first argument. At that time appellee's counsel made a motion for additional attorney's fees pursuant to A.R.S. § 12–2106, on the grounds that the appeal was frivolous. This Court believes that the appeal was not frivolous and that this Court should not impose the penalty provided by A.R.S. § 12–2106, and, therefore, the motion for additional attorney's fees is denied.

The judgment of the lower court is affirmed.

HATHAWAY and MOLLOY, JJ., concur.